# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 10, 2022

Lyle W. Cayce
Clerk

No. 21-30220

John Price,

*Plaintiff—Appellant*,

*versus*

International Paper Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
Case No. 5:19-CV-1362

Before Jones, Haynes, and Costa, *Circuit Judges*.

Per Curiam:*

After being terminated, John Price sued his employer, International Paper Company, for violations of the Family Medical Leave Act ("FMLA"). The district court granted summary judgment in favor of International Paper, and Price appealed. For the reasons that follow, we AFFIRM in part and REVERSE and REMAND in part.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30220

## A. Background

John Price worked for International Paper, a paper packaging and manufacturing company, from 2011 until his termination on August 30, 2018. International Paper maintains an "Attendance Policy" that its employees are required to abide by. Under the Attendance Policy, if an employee misses work, the absence counts as an "occurrence." If an employee has more than three occurrences within a six-month period, a guidance committee is appointed, which reviews and determines what action, if any, should be taken with regards to that employee.

From 2017 to 2018, Price incurred several occurrences under the Attendance Policy. According to International Paper, Price either missed work or left early on seven separate occasions during a twelve-month period.[1] Price alleges that during this period, he suffered "serious medical issues and complications," which frequently required him to be out of the office. Due to these medical issues, Price sought and took three separate periods of approved FMLA leave: from December 25, 2017 to January 20, 2018; from May 8, 2018 to July 16, 2018; and from July 23, 2018 to August 5, 2018.

At issue on appeal is the third period of FMLA leave. Price asserts that he became ill on July 20, left work early, and sought a medical certification to support his leave request. Price's medical providers

---

[1] International Paper cites the following seven dates as Price's occurrences: November 28, 2017; December 22, 2017; February 21, 2018; April 13, 2018; April 24, 2018; July 20, 2018; and August 7, 2018.

submitted information requesting that Price be permitted to take "intermittent leave," and International Paper approved the leave request.

Price returned to work on August 6.[2]  On August 7, Price interacted with Chad Deas, an Operations Manager at International Paper.  Deas told Price that he had to go home and could only return with a medical release from his doctor.  Although Price had taken FMLA-approved leave before, he had not been required to provide a medical release to return to work for those periods.  Because Price was forced to leave work (and did leave) on August 7, International Paper contended that he incurred another occurrence under the Attendance Policy.

International Paper appointed a guidance committee, which recommended that Price be terminated.  John Woodall, one of Price's supervisors, stated that Price was terminated because he left early on August 7.  Woodall explicitly testified that if Price had not left early that day, there would not have been a guidance committee meeting, and there would have been no issue for termination.

Shortly after his termination, Price filed the present suit against International Paper.  As relevant here,  Price alleges that International Paper (1) interfered with his rights under the FMLA and (2) retaliated against him for taking FMLA leave.  International Paper moved for summary judgment

---

[2] Some facts in the record indicate that Price may have been at work at some point on July 28; however, he fell ill that day and returned home.

on Price's FMLA interference and retaliation claims, which the district court granted. Price timely appealed.

## B. Jurisdiction & Standard of Review

We review "a district court's grant of summary judgment de novo, applying the same standards as the trial court." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). In addition, when reviewing, we "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## C. Discussion

The FMLA guarantees eligible employees the right to take a total of twelve weeks of medical leave during any twelve-month period for a serious medical condition. 29 U.S.C. § 2612(a)(1)(D). As such, the FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise" of "any right provided." *Id.* § 2615(a)(1). Concomitantly, the FMLA also prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful" by the Act. *Id.* § 2615(a)(2).

Price alleges that International Paper violated the FMLA by interfering with his rights and retaliating against him for exercising such rights. We discuss both claims below.

### 1. FMLA Interference

The district court granted summary judgment on Price's interference claim, concluding that Price could not establish a prima facie case. To establish a prima facie interference case, Price must prove the following elements: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).[3]

Price theorizes that International Paper interfered with his FMLA rights by improperly subjecting him to return-to-work requirements associated with continuous leave, rather than intermittent leave. The district court concluded that Price (1) "was not certified by his treating physician" for the July 20 absence, and (2) did not notify "[International Paper] of his intention to take August 7, 2018, as FMLA leave"; therefore, Price could not establish two elements of his prima facie case. Nevertheless, the court went on to conclude that "Price took continuous leave, not intermittent leave, and [International Paper] was within its rights to require Price to submit a doctor's certification as to Price's fitness to return to work." Therefore, summary judgment was warranted because Price had not been denied any benefits under the FMLA.

The district court's reasoning suffers from three fatal flaws. First, at the outset, we note that the district court's focus on the July 20 absence was misplaced. Woodall, one of Price's supervisors, testified that if Price had not left early on August 7, he would not have been terminated. Indeed, Woodall confirmed that, but for the August 7 occurrence, "there wouldn't have been

---

[3] Neither party disputes that Price is an eligible employee, that International Paper was subject to FMLA requirements, or that Price was entitled to leave.

a committee meeting" and "there would be no issue for termination." Drawing all factual inferences in Price's favor then, we must assume that Price would not have been terminated if he had not left work early on August 7. Accordingly, whether or not July 20 was FMLA-approved leave is irrelevant.

Second, the district court assumed that Price intended to miss work on August 7 as part of his FMLA leave. That assumption is incorrect. Price did not take FMLA leave on August 7; rather, the uncontroverted evidence establishes that Price returned to work at the conclusion of his FMLA leave period on August 6. Despite his return, Deas, a supervisor, asked Price to leave because he did not have a medical release. Thus, as Price argues, he was absent only because International Paper refused to allow him to work without a medical release. But according to Price, International Paper was not permitted to demand such a release because his leave was intermittent.

This leads us to the third error in the district court's holding: the district court concluded that, because Price was absent from work for a sixteen-day period, his leave was continuous, rather than intermittent. As such, "[International Paper] was within its rights to require a doctor's certification as to Price's fitness to return to work." This conclusion was incorrect.

The FMLA permits employees to seek either continuous leave or intermittent leave. 29 U.S.C. § 2612(b)(1). Admittedly, the FMLA and its accompanying regulations do not provide clear parameters on what qualifies as intermittent leave versus continuous leave. The regulations merely note that intermittent leave is "leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a). The distinction between the types of leave is important, however, as the regulations permit employers to require medical releases as a condition to return to employment for *non-*

*intermittent* leave. *Id.* § 825.312(e) ("An employer may delay restoration to employment until an employee submits a required fitness-for-duty certification."). However, the regulations do not contemplate such a demand for intermittent leave. *See id.* § 825.312(f) ("An employer is not entitled to a certification of fitness to return to duty for each absence taken on an intermittent . . . schedule.").

Price maintains that his leave was intermittent; therefore, he was under no obligation to provide a fitness-for-duty certification or any other medical release before he could return to his position. Price cites to evidence in the record which supports this contention, namely the documentation from his medical provider. In this document, Price's medical provider certified a request *only for intermittent leave*; the provider did not indicate that Price was taking a combination of continuous leave and intermittent leave. International Paper approved this FMLA intermittent leave request and has not provided any contradicting evidence establishing that it denied intermittent leave or otherwise substituted continuous leave. International Paper nevertheless argues that "Price's leave was not intermittent because it was not 'several days'" as the regulations guide. However, it fails to direct us to any analogous authority holding that a sixteen-day period is per se continuous leave and cannot be categorized as intermittent leave.

Additionally, whether or not Price was actually gone for a sixteen-day period is disputed. According to Price, he attempted to return to work on July 28 but fell ill. If true, Price was not absent for sixteen days straight as International Paper argues and as the district court concluded. Regardless, this is precisely the kind of factual dispute that is inappropriate for resolution at summary judgment. *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). Because there are disputed facts, and in the absence of any contrary precedent, we find International Paper's argument unavailing.

Even assuming arguendo that the absence was continuous, International Paper fails to show that it satisfied its own requirements for requesting a medical release. We recognize that, for continuous leave, an employer is permitted to require a "fitness-for-duty certification" prior to an employee's return. *See* 29 C.F.R. § 825.312(a). But an employer cannot simply demand such a certification from an employee without adequate notice. Rather, "[i]f the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the employer must provide notice of such requirement," *id.* § 825.300(d)(3), "at the same time [the employer] issues the designation notice," *id.* § 825.312(f). A "[f]ailure to follow the notice requirements ... may constitute an interference with" FMLA rights. *Id.* § 825.300(e).

Nothing in the record indicates that, at the same time it issued the designation notice, International Paper informed Price that he would need a fitness-for-duty certification or any other medical release. Instead, the record supports a contrary conclusion. Taking Price's evidence as true for purposes of this appeal, one could conclude that International Paper waited for Price to show up to work on August 7 before letting him know of the certification requirement, made Price leave work for failing to meet the requirement, and then consequently terminated Price *because* he left. That was inconsistent with the fact that International Paper had not required Price to submit a medical release after he returned from his prior FMLA leave and that Price had even returned to work on August 6—the day before—without any controversy. At bottom, the notion that Price was sent home on August 7 by International Paper but then fired for going home on August 7 creates, at the very least, a fact issue on this point.

In sum, viewing the evidence in the light most favorable to Price, we conclude that the district court erred in finding that Price's leave was continuous or, alternatively, that they gave him appropriate notice of the

need for a medical release.  Accordingly, a reasonable jury could conclude that International Paper interfered with Price's FMLA-protected rights when it sent Price home on August 7, rather than allowing him to return to work.  Because the uncontroverted evidence establishes that Price would not have been subject to termination despite the August 7 occurrence, and International Paper caused the occurrence as more fully discussed above, we conclude that the district court erred in granting summary judgment on Price's interference claim.

### 2. FMLA Retaliation

The district court also granted summary judgment on Price's retaliation claim, concluding that (1) Price failed to state a prima facie retaliation case, and (2) even if he could, International Paper had a non-discriminatory reason for Price's termination.  We conclude that the district court did not commit any reversible error on this claim.

We therefore REVERSE the district court's summary judgment order in so far as it pertains to the interference claim and REMAND the case for further proceedings consistent with this opinion.  We AFFIRM the remainder of the district court's judgment.